IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-748-D

MAHER SOLIMAN, )
)
Plaintiff, )
)
v. ) **ORDER**
)
WORLDWIDE LANGUAGE )
RESOURCES, INC., AND )
DOES 1 TO 20, INCLUSIVE, )
)
Defendants. )

On August 18, 2016, Maher Soliman ("Soliman" or "plaintiff") filed a pro se complaint against Worldwide Language Resources, Inc. ("WWLR"), and Does 1 to 20 (collectively, "defendants") [D.E. 1]. Soliman claims that by failing to hire him, defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 to 634 ("ADEA"), breached an employment contract, and committed various state-law torts. On September 20, 2016, defendants moved to dismiss Soliman's complaint under Federal Rule of Civil Procedure 12(b)(6) [D.E. 5] and filed a memorandum in support [D.E. 6]. On October 6, 2016, Soliman responded in opposition [D.E. 11]. As explained below, the court grants defendants' motion to dismiss.

I.

Soliman is a 62-year old Egyptian-American living in California. Compl. [D.E. 1] 2, ¶ 1. Born in Cairo, Soliman speaks Arabic and English. Id. ¶ 10. He is a United States citizen and holds a "Top Secret" security clearance, bachelor's degrees in business administration and accounting, and a juris doctor degree. Id. From 2003 to 2012, Soliman worked as an independent contractor for the United States Department of Defense and United States Department of State. Id. ¶ 11. During that time, Soliman deployed to Iraq seven times, and served in various capacities, including linguist,

cultural advisor, and liaison between the United States embassy and Iraqi judges. Id.

On or about January 8, 2016, Mohammed Tajak, WWLR's recruiting officer, contacted Soliman regarding a translator position with one of WWLR's clients. Id. ¶ 12. WWLR is based in Fayetteville, North Carolina, and provides language and translation services to the United States government and other clients. Id. ¶ 2. On or about January 11, 2016, Soliman "completed the application process," which entailed executing WWLR's Job Description and Wage Agreement Form. Id. ¶ 13; see also Mot. to Dismiss [D.E. 6-1]. The application listed the potential position's salary as $90,000.00 per year. Compl. ¶ 12; Mot. to Dismiss [D.E. 6-1]. On January 25, 2016, Soliman completed the required four-part language test. Compl. ¶ 14. On January 27, 2016, Tajak called Soliman to congratulate him on his test results and inform Soliman that his deployment was "imminent." Id. ¶ 15. Soliman alleges that during this phone call Tajak stated that Soliman's "employment contract will be extended to up to three years." Id. Soliman accepted the "offer." Id.

On or about February 4, 2016, Tajak sent Soliman an email stating that the client did not select Soliman, and WWLR was therefore unable to process Soliman's application. Id. ¶ 16; Mot. to Dismiss [D.E. 6-2]. Tajak then informed Soliman that WWLR "would not be able to continue with [Soliman's] hiring process." Compl. ¶ 16. Later on February 4, 2016, Soliman received a second email, this time from Regina Humphrey, a WWLR human-resources employee. Id. ¶ 17. In the email, Humphrey informed Soliman that the client (an unidentified government agency) had "declined to accept [Soliman]" for work on its contract and gave no reason for doing so. Id.; Mot. to Dismiss [D.E. 6-3].[1]

---

[1] In his complaint, Soliman refers to his "application" but does not attach any application documents, including the Job Description and Wage Agreement Form. See Compl. ¶ 12. Although generally a court analyzing a motion to dismiss under Rule 12(b)(6) cannot consider extrinsic evidence, the court may consider a document attached to a motion to dismiss "in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (alterations in original) (quotation omitted). Under this standard, the court may consider the Job Description and Wage Agreement Form submitted by

2

After learning of WWLR's client's decision not to select him, Soliman filed a discrimination charge against WWLR with the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 21. On May 27, 2016, the EEOC dismissed Soliman's EEOC charge after it was "unable to conclude that the information obtained establishes violations of the statutes." Compl. Ex. A.

On September 20, 2016, Soliman filed this action asserting seven causes of action: (1) breach of contract and promissory estoppel, id. ¶¶ 23–26; (2) employment discrimination on the basis of national origin in violation of Title VII, id. ¶¶ 27–34; (3) employment discrimination on the basis of age in violation of the ADEA, id. ¶¶ 35–42; (4) employment discrimination on the basis of religion in violation of Title VII, id. ¶¶ 43–51; (5) fraudulent and negligent misrepresentation under North Carolina law, id. ¶¶ 52–56; (6) wrongful refusal to hire in violation of North Carolina public policy, id. ¶¶ 57–62; and (7) negligent retention and supervision under North Carolina law. Id. ¶¶ 63–73. Soliman seeks damages and injunctive relief. Id. at 15–17. On September 20, 2016, defendants moved to dismiss Soliman's complaint under Federal Rule of Civil Procedure 12(b)(6) [D.E. 5]. On October 6, 2016, Soliman responded in opposition [D.E. 11].

II.

A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet

---

defendants. Additionally, Soliman's complaint references his "offer" listing an annual salary of $90,000.00, and two emails sent by WWLR. See Compl. ¶¶ 12, 17, 26. Because these documents are integral to and expressly relied upon in his complaint and because Soliman does not dispute their authenticity, the court considers those documents as well. See, e.g., Am. Chiropractic Ass'n, 367 F.3d at 234.

3

Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). However, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Id. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quotation omitted).

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009); Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd., 591 F.3d at 255–56; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Soliman asserts three claims under federal law. Soliman claims that defendants failed to hire him due to his national origin and religion in violation of Title VII, and failed to hire him due to his age in violation of the ADEA. In relevant part, Title VII makes it unlawful for an employer to fail or refuse to hire an applicant because of his religion or national origin. See 42 U.S.C. § 2000e-2(a)(1). In relevant part, the ADEA prohibits an employer from failing or refusing to hire an applicant because of his age where the applicant is age 40 and above. See 29 U.S.C. § 623(a)(1).

Soliman has no direct evidence of illegal discrimination and proceeds under the McDonnell-Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Williams v. Giant Food Inc., 370 F.3d 423, 430 & n.5 (4th Cir. 2004) (Title VII case); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004) (ADEA case). Under this framework, a plaintiff first must establish a prima facie case of discrimination. See, e.g., O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311–12 (1996); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas Corp., 411 U.S. at 802. If the plaintiff establishes a prima facie case, "the

4

burden shifts to the employer . . . to articulate a legitimate, non-discriminatory reason for the adverse employment action." Lettieri v. Equant, Inc., 478 F.3d 640, 646 (4th Cir. 2007) (quotation omitted); see St. Mary's Honor Ctr., 509 U.S. at 506–07. If the defendant-employer meets its burden of production, then the plaintiff must prove by a preponderance of the evidence that a genuine issue of material facts exists concerning whether the employer's stated reason for the adverse employment action was a mere pretext for illegal discrimination. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Lettieri, 478 F.3d 646–47. "At this last step the burden to demonstrate pretext merges with the ultimate burden of persuading the court that [the plaintiff] has been a victim of intentional discrimination." Lettieri, 478 F.3d 646–47 (quotation omitted) (alteration in original).

A plaintiff demonstrates pretext by showing that the defendant-employer's "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of age[, national origin, or religious] discrimination." Mereish, 359 F.3d at 336 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). To prevail on an age discrimination claim, a plaintiff must prove that age was not only a motivating factor in the employer's adverse employment action, but that "age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176–77 (2009); see EEOC v. Baltimore Cty., 747 F.3d 267, 273 (4th Cir. 2014); Duffy v. Belk, Inc., 477 F. App'x 91, 93 (4th Cir. 2012) (unpublished); Bodkin v. Town of Strasburg, 386 F. App'x 411, 413 (4th Cir. 2010) (per curiam) (unpublished).

In order to establish a prima facie of failure to hire in violation of Title VII or the ADEA, a plaintiff must show that: (1) he belonged to a protected class; (2) he applied for a specific position; (3) he was qualified for the position; and, (4) the employer rejected him for that position under circumstances giving rise to an inference of illegal discrimination. See, e.g., EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 & n.2 (4th Cir. 2010).

Soliman has plausibly alleged the first three elements of his prima facie case; however, he

has failed to plausibly allege the fourth element. Soliman argues that three alleged facts satisfy the fourth element of his prima facie case. First, Soliman alleges that WWLR did not hire him "despite being fully qualified for the position." Compl. ¶¶ 29, 37, 45. Second, Soliman alleges that Tajak sought to hire Muslim candidates as opposed to Christians like Soliman. See id. ¶ 48. Third, Soliman alleges that WWLR "has a pattern and practice of denying Egyptians employment opportunities on the basis of their national origin." Id. ¶ 31.

Soliman has not plausibly alleged that WWLR rejected him under circumstances giving rise to an inference of unlawful discrimination. See McCleary-Evans v. Md. Dept. of Transp., 780 F.3d 582, 585–88 (4th Cir. 2015); Falegan v. Thomas, No. 5:09-CV-00317-BR, 2009 WL 3415665, at *1 (E.D.N.C. Oct. 22, 2009) (unpublished). As for Soliman's allegation that he was qualified yet WWLR rejected him, being qualified for the position is the third element of the prima facie case. See, e.g., Sears Roebuck & Co., 243 F.3d at 851. Failing to hire a qualified applicant does not alone raise an inference of illegal discrimination. See, e.g., McCleary-Evans, 780 F.3d at 585–88. Employers prefer to hire qualified applicants when the opportunity arises but sometimes must choose among many qualified applicants. "The crucial issue in a Title VII action [or an ADEA action] is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995). Thus, Soliman's qualifications alone do not satisfy the fourth element of his prima facie case. As for Soliman's allegation that Tajak sought to hire Muslim candidates and not hire Christians like Soliman, Soliman's allegation is a bare assertion devoid of further factual enhancement. See, e.g., McCleary-Evans, 780 F.3d 585–88; Nemet Chevrolet, Ltd., 591 F.3d at 255. The same conclusion applies to Soliman's bare allegation that WWLR "has a pattern and practice of denying Egyptians employment opportunities on the basis of their national origin." Compl. ¶ 31; cf. McCleary-Evans, 780 F.3d at 585–88; Nemet Chevrolet, Ltd., 591 F.3d at 255. Because Soliman has not plausibly alleged the fourth element of his prima facie case, Soliman has failed to state a claim for

discrimination based on national origin or religion under Title VII or age discrimination under the ADEA. See, e.g., McCleary-Evans, 780 F.3d 585–88.

Next, the court addresses Soliman's claims under North Carolina law: breach of contract, promissory estoppel, fraudulent and negligent misrepresentation, wrongful refusal to hire in violation of North Carolina public policy, and negligent retention and supervision. In exercising supplemental jurisdiction over Soliman's state-law claims, the court applies North Carolina substantive law. See Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 n.7 (4th Cir. 1992). In resolving any disputed issue of state law, the court must determine how the Supreme Court of North Carolina would rule. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). If the Supreme Court of North Carolina "has spoken neither directly nor indirectly on the particular issue" at hand, a federal court must "predict how [the North Carolina Supreme Court] would rule if presented with the issue." Id. (quotations omitted). A federal court predicting an outcome under state law "may consider lower court opinions[,] . . . treatises, and the practices of other states." Id. (quotation omitted).[2] When predicting an outcome under state law, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

As for Soliman's breach of contract claim, Soliman alleges that on or about January 8, 2016, Tajak called Soliman and "extended an offer of employment." Compl. ¶¶ 15, 24. Soliman further alleges that, on January 27, 2016, in another phone conversation, Tajak extended the contractual duration "to up to three years," and that Soliman "accepted" the offer. Id. ¶¶ 15, 24.

North Carolina is an at-will employment state. "[A]bsent an employment contract for a definite period of time, both employer and employee are generally free to terminate their association

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

7

at any time and without reason." Head v. Adams Farm Living, Inc., 775 S.E.2d 904, 909 (N.C. Ct. App. 2015) (quotation omitted). The at-will doctrine has three limited exceptions: (1) the parties enter an employment contract for a definite period of time; (2) federal and state statutes that prohibit unlawful discharge based on impermissible considerations such as the employee's age, race, sex, religion, national origin, or disability; and (3) discharge in contravention of North Carolina public policy. Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997); see Onwe v. Waste Indus., Inc., No. 5:15-CV-611-D, 2016 WL 6330387, at *2 (E.D.N.C. Oct. 26, 2016) (unpublished); Head, 775 S.E.2d at 909; Whiting v. Wolfson Casing Corp., 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005); Considine v. Compass Grp. USA, Inc., 145 N.C. App. 314, 321, 551 S.E.2d 179, 184, aff'd, 354 N.C. 568, 557 S.E.2d 528 (2001) (per curiam).

Soliman fails to plausibly allege that he and WWLR agreed to a contract for a definite term. First, Soliman alleges that WWLR "extended an offer of employment to him" on or about January 8, 2016, but does not specify the terms of that offer. Compl. ¶¶ 15, 24. On January 11, 2016, Soliman completed the application process. See id. ¶ 13. As part of that process, Soliman received the Job Description and Wage Agreement Form, which specifically states:

> It does not modify the <u>at will</u> employment relationship between you and WorldWide; does not constitute a commitment by WorldWide to employ me for any particular length of time or at all; and does not restrict either WorldWide or myself from ending the employment at any time for any reason, with or without notice.

Mot. to Dismiss [D.E. 6-1] (emphasis in original). According to Soliman, on January 25, 2016, he passed the 4-part language test, and, on January 27, 2016, Tajak told him this deployment was "imminent." Id. ¶ 15. Tajak also told Soliman on January 27, 2016, "that his employment contract <u>will be</u> extended to up to three years." Id. (emphasis added). Soliman then purported to accept "the offer." Id.

Soliman has not plausibly alleged a contract for a definite term. The "at will" language in the application "easily overrides" any implication to the contrary suggested by the ambiguous statement that Soliman's alleged employment contract will be extended to up to three years. See

8

Ausley v. Bishop, 133 N.C. App. 210, 219–20, 515 S.E.2d 72, 79 (1999). Thus, Soliman's breach of contract claim fails.

Soliman also alleges "promissory estoppel." Compl. ¶ 26. Under North Carolina law, promissory estoppel applies only "in a defensive situation, where there has been an intended abandonment of an existing right by the promisee." Home Elec. Co. of Lenoir v. Hall & Underdown Heating & Air Conditioning Co., 86 N.C. App. 540, 543, 358 S.E.2d 539, 541 (1987), aff'd, 322 N.C. 107, 366 S.E.2d 441 (1988) (per curiam); see Melvin v. Principi, No. 5:03-CV-968-FL(3), 2004 WL 3769429, at *10 (E.D.N.C. Dec. 2, 2004) (unpublished). Soliman cannot use promissory estoppel offensively to obtain affirmative relief. See, e.g., Head, 86 N.C. App. at 543–45, 358 S.E.2d at 541–42. Thus, Soliman's promissory-estoppel claim fails.

Next, Soliman alleges that WWLR fraudulently and negligently misrepresented that Soliman's deployment was "imminent" and that his "employment contract" will be "extended to up to three years." Compl. ¶¶ 15, 24, 53–55. To state a fraud claim, a plaintiff must plausibly allege: "(1) [a] false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party," where "any reliance on the allegedly false representations must be reasonable." Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007); see Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17, 418 S.E.2d 648, 658–59 (1992). To state a negligent-misrepresentation claim, a plaintiff must plausibly allege that he (1) justifiably relied, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care. Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988); Brinkman v. Barrett Kays & Assocs., 155 N.C. App. 738, 742, 575 S.E.2d 40, 43–44 (2003). Defendants argue that Soliman fails to satisfy either standard.

Soliman's fraudulent-misrepresentation claim fails for multiple reasons. First, Soliman does not plausibly allege an intent to deceive. Cf. Compl. ¶ 55. For example, even assuming that Tajak

9

had extended a legally sufficient offer, Soliman does not allege that WWLR (through Tajak or anyone else) knew that the offer would be rescinded when Tajak made the representations to Soliman. Cf. Hunter v. Guardian Life Ins. Co. of Am., 162 N.C. App. 477, 481, 593 S.E.2d 595, 599 (2004). Instead, Soliman simply alleges that Tajak made statements that led Soliman to believe he would be hired, yet Soliman was not hired. Soliman's bare allegation of an intent to deceive is a legal conclusion that the court need not accept as true when considering a motion to dismiss for failure to state a claim.

Alternatively, Soliman fails to plausibly allege that he justifiably relied to his detriment on Tajak's statements. A misrepresentation claim "must allege pecuniary loss. In other words, the complaint must allege that the plaintiff's reliance was actually detrimental." Howard v. Cty. of Durham, 227 N.C. App. 46, 55, 748 S.E.2d 1, 7 (2013). Soliman, however, alleges no facts in support of his legal conclusion that he "justifiably relied upon the representation as true and acted upon it to his damage." Compl. ¶ 55. For example, Soliman does not allege that he declined other employment opportunities, expended resources in preparing for his "imminent" deployment, or otherwise took actions in reliance on Tajak's statements that caused him pecuniary harm. Having failed to allege facts in support of his bare legal conclusion, Soliman fails to state a claim for fraud or negligent misrepresentation. See, Howard, 227 N.C. App. at 56–57, 748 S.E.2d at 7–8.

Soliman claims that WWLR's failure to hire him violated North Carolina public policy. In support, Soliman notes that North Carolina's public policy protects and safeguards "the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, biological sex or handicap." N.C. Gen. Stat. § 143-422.2.

North Carolina does not recognize a private cause of action under section 143-422.2. See, e.g., McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003); Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533,

10

544 (E.D.N.C. 2008); Roberts v. Wal-Mart Stores, Inc., 503 F. Supp. 2d 787, 788–89 (E.D.N.C. 2007); Mullis v. Mechs. & Farmers Bank, 994 F. Supp. 680, 687 (M.D.N.C.1997). Thus, Soliman's failure-to-hire claim under section 143-422.2 fails. Moreover, to the extent Soliman seeks relief under North Carolina law as an applicant for employment for the tort of wrongful discharge in violation of public policy and relies on section 143-422.2 as the public policy, the claim fails. The tort of wrongful discharge in North Carolina requires that a person be an employee and then be discharged. "By definition, the tort does not apply to applicants." Bufford v. Centurylink, 759 F. Supp. 2d 707, 708 (E.D.N.C. 2010).

Finally, Soliman alleges that WWLR negligently retained and supervised Tajak and Humphrey. Compl. ¶¶ 63–73. North Carolina courts "recognize[] the existence of a claim against an employer for negligence in employing or retaining an employee whose wrongful conduct injures another." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 494, 340 S.E.2d 116, 123 (1986). To hold an employer liable, a plaintiff "must prove that the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." Id. at 495, 340 S.E.2d at 124; Smith v. Privette, 128 N.C. App. 490, 494, 495 S.E.2d 395, 398 (1998); see Smith, 202 F.3d at 249–50.

Soliman's negligent retention and supervision claims fail because he alleges no facts in support of his legal conclusions. For example, "[a]n essential element of a claim for negligent retention of an employee is that the employee committed a tortious act resulting in [the] plaintiff['s] injuries." Waddle v. Sparks, 331 N.C. 73, 87, 414 S.E.2d 22, 29 (1992). Soliman, however, has not plausibly alleged that Tajak and Humphrey committed any tortious acts. Instead, Soliman simply asserts that Tajak and Humphrey "had the propensity to engage" in the alleged tortious acts described in his complaint. See Compl. ¶¶ 66, 68–69. That naked allegation is not enough to survive a motion to dismiss. See Waddle, 331 N.C. at 87, 414 S.E.2d at 30; see also Jackson v. FKI Logistex, 608 F. Supp. 2d 705, 707–09 (E.D.N.C. 2009). Having failed to plausibly allege an underlying tort,

11

Soliman's fails to state a claim for negligent retention and supervision.

Alternatively, even if Soliman had plausibly alleged an underlying tort, he still would not have stated a claim for negligent retention or supervision, because he has offered no facts suggesting that WWLR "knew or had reason to know" of Tajak and Humphrey's alleged incompetence before they engaged in any misrepresentations. For example, Soliman does not plausibly allege that WWLR had received complaints regarding Tajak or Humphrey, disciplined them previously for similar conduct, or was otherwise on notice of their alleged tortious tendencies. Soliman instead offers the legal conclusion that WWLR "knew or should have known of their incompetency" before each allegedly committed tortious acts. See Compl. ¶ 70. Even viewing the complaint in the light most favorable to Soliman, Soliman fails to state a claim for negligent retention or supervision. See, e.g., Bratcher, 545 F. Supp. 2d at 546–47.

III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 5], and DISMISSES plaintiff's complaint without prejudice.

SO ORDERED. This 29 day of December 2016.

JAMES C. DEVER III
Chief United States District Judge